New York & Porto Rico Steamship Co., Plaintiff and Appellee, *v.* Porto Rico Fruit Union, Defendant and Appellant.

## Appeal from the District Court of San Juan in an Action of Debt.

### No. 2488.—Decided April 3, 1922.

Maritime Transportation — Payment of Freight — Freight Collect. — The owner of a ship may recover from a shipper of merchandise the amount of the freight although the merchandise may have been accepted by the carrier under the condition of "freight collect," meaning that the freight will be collected from the consignee upon delivery of the merchandise.

The facts are stated in the opinion.

*Messrs. O. M. Wood* and *Soto Gras & Siaca* for the appellant.

*Mr. J. Sifre, Jr.,* for the appellee.

Mr. Chief Justice del Toro delivered the opinion of the court.

In January of 1920 shipments were made at the port of San Juan, P. R., by the steamship *Coamo* belonging to the plaintiff corporation for the port of New York, N. Y., of two lots of grapefruits, one consisting of 2,496 crates and the other of 40 crates.

In the bills of lading the defendant corporation appeared as the shipper and P. Ruhlman & Co. of New York, N. Y., as the consignees, and the bills of lading contained the words "Freight Collect" which mean that the freight money should be collected at the point of destination.

The grapefruits were delivered to the consignees and the plaintiff corporation undertook to collect from them the freight money amounting to $1,268, but it was not paid because the said consignees had been adjudged bankrupts. Then the plaintiff demanded payment of the defendant and it having been refused, the former brought this action in which it recovered judgment.

The defendant appealed from that judgment and alleged the commission of the following two errors:

1. In holding that the defendant was responsible, notwithstanding the fact that the shipments were accepted for the account of P. Ruhlman & Co. in accordance with the letter of guaranty given by the said firm.

2. In holding that the defendant was responsible, notwithstanding the showing made that it acted as a mere forwarding agent for the Isabel Grove Company and the Winthrop Estate, the owners of the grapefruits.

Let us examine the first assignment. The court admitted in evidence a letter written in English which reads as follows:

"Freight Guarantee.—New York, Oct. 20, 1919.—The New York & Porto Rico Steamship Co., 11 Broadway, New York City.—Gentlemen:—We request that you instruct your Agents to accept shipments of fruits from the following shippers consigned to us direct, freight payable at New York, and we hereby agree to pay all freight and charges on such shipments made during the season of 1919–1920 to ———, whether delivered in whole or in part, sound or unsound.— Yours truly, P. Ruhlman & Co.—Signature.—Ports of Shipment All Porto Rican Ports.—Names of Shippers All Shippers consigning us."

The plaintiff admitted that in accordance with that letter and with the bills of lading it could collect the freight from the consignees, as it endeavored to do, but maintained that under the terms of the contract and according to jurisprudence, it could also collect the freight from the defendant; and in our opinion the plaintiff was right.

In one of the many printed clauses of the bills of lading it is specified that the shipper and the consignee are jointly and severally liable for the payment of the freight, but ignoring this printed condition and taking in consideration only the special words "freight collect" in the contract and the letter of guaranty, still we are of the opinion that the right of the ship-owner to collect the freight from the shipper is clear.

Many cases have been cited in the briefs. We will refer to that of *Wooster* v. *Tarr,* 85 American Decisions, 707, which discusses the question fully and conclusively. It is a Massachusetts case and the opinion was written by Chief Justice Bigelow. It was said:

"The question raised in this case is very fully discussed in *Blanchard* v. *Page,* 8 Gray, 281, 286, 290–295. It is there stated to be the settled doctrine that a bill of lading is a written simple contract between a shipper of goods and the ship-owner; the latter to carry the goods, and the former to pay the stipulated compensation when the service is performed. Of the correctness of this statement there can be no doubt. The shipper or consignor, whether the owner of the goods shipped or not, is the party with whom the owner or master enters into the contract of affreightment. It is he that makes the bailment of the goods to be carried, and, as the bailor, he is liable for the compensation to be paid therefor. The *dictum* of Bayley, J., in *Moorsom* v. *Kymer,* 2 Maule & S. 318, subsequently repeated by Lord Tenterden in *Drew* v. *Bird,* Moody & M. 156, that in the absence of an express contract by the shipper to pay freight, when the goods are, by the bill of lading, to be delivered on payment of freight by the consignee, no recourse can be had for the price of the carriage to the shipper, has been distinctly repudiated, and can not be regarded as a correct statement of the law: *Sanders* v. *Van Zeller,* 4 Q. B. 260, 284; Maclachlan on Shipping, 426.

"It is contended, on the part of the defendants, that the omission of the master to collect the freight of the consignees of the cargo or their assigns, under the circumstances stated, was a breach of good faith towards the shippers, which operates as an estoppel on him and the other owners of the vessel, whose agent he was, to demand the freight money of the defendants. But there are no facts on which to found an allegation of bad faith against the master. He did not act contrary to his contract, or inconsistent with his duty towards the shippers. It is true that he omitted to enforce his lien on the cargo for the freight, by delivering it without insisting on payment thereof by the consignees. This was no violation of any obligation which he had assumed towards the defendants as shippers of the cargo. A master is not bound at his peril to enforce payment of freight from the consignees. The usual clause in bills of lading, that the cargo is to be delivered to the person named, or his assignees,

'he or they paying freight,' is only inserted as a recognition or assertion of the right of the master to retain the goods carried until his lien is satisfied by payment of the freight, but it imposes no obligation on him to insist on payment before delivery of the cargo. If he sees fit to waive his right of lien and to deliver the goods without payment of the freight, his right to resort to the shipper for compensation still remains: *Shepard* v. *De Bernales,* 13 East, 565; *Domett* v. *Beckford,* 5 Barn. & Adol. 521, 525; *Christy* v. *Row,* 1 Taunt. 300.'' *Wooster* v. *Tarr,* 85 Am. Dec. 708–709.

Nor was the second error assigned committed, in our opinion. It is true that it was shown that the defendant was not the owner of the grapefruits transported, but the plaintiff contracted directly with the defendant and the contracts, as set out in the bills of lading, did not show that the defendant was acting as the agent and in the names of other persons.

The defendant alleged that the plaintiff knew that it was not the owner of the fruit and was acting simply as a forwarding agent, but when the evidence was examined the manager of the defendant corporation, S. A. Davidson, testified as follows:

''Q. Does the steamship company know, or did it know at that time, of the capacity in which the defendant, the Porto Rico Fruit Union, was acting?—A. Yes.

''Q. Did the crates in which this fruit was packed have any outside marks showing to whom they belonged?—A. Yes.

''Q. (Plaintiff.) When that fruit was being shipped, who had charge of arranging all of the details of the shipments? Was it the Porto Rico Fruit Union?—A. Yes.

''Q. Did it sign the bills of lading? Who appears as the shipper in the bills of lading? Is it the Porto Rico Fruit Union?—A. The Porto Rico Fruit Union.

''Q. Then, who contracted with the New York & Porto Rico Steamship Company? Was it the Porto Rico Fruit Union?—A. The Isabela Grove Company by its agent, the Porto Rico Fruit Union.

''Q. When you made the contract, acting as you have said as agent, was it made known to the New York & Porto Rico Steamship Company that you were acting as such agent of the Isabela Grove Company?—A. Not at that very time.

"Q. Then, at the time that the contract was made you did not inform the New York & Porto Rico Steamship Company that you were acting as the agent of the Isabela Grove Company?—A. Not at that time."

It may be seen, therefore, that whatever weight the allegation of the defendant might have had, the fact is that the satisfactory evidence required was not presented.

By virtue of all the foregoing the judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey and Hutchison concurred.